IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JESSICA NICHOLS-VILLALPANDO,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>  )<br>LIFE CARE CENTERS OF AMERICA,  )<br>INC.,  )<br>  )<br>Defendant.  )<br>  ) | CIVIL ACTION<br><br>No. 05-2285-CM |

## MEMORANDUM AND ORDER

Plaintiff Jessica Nichols-Villalpando, a former employee of defendant Life Care Centers of America, Inc., brings this action for sexual harassment and retaliatory discharge under 42 U.S.C. § 2000e, *et seq.* This matter is before the court on defendant's motion for summary judgment (Doc. 57).

## I.    FACTUAL BACKGROUND[1]

Defendant owns Garden Terrace, a residential care facility in Overland Park, Kansas. On August 21, 2004, plaintiff began working Saturdays and Sundays at Garden Terrace as a Licensed Practical Nurse. She reported to Deronda Rinas, the Director of Nursing. Terry Newbill, a co-worker, worked in housekeeping and typically worked evenings, Thursday though Sunday. A couple of weeks after plaintiff started working for defendant, Mr. Newbill began inappropriately touching her and making sexual comments. Mr. Newbill would put his arm around her waist and

---

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

squeeze into her. And he made several inappropriate comments to her, including twice asking her about his cologne, mentioning that plaintiff's scrubs made her butt look nice and saying that he could "do [her] better than [her] husband." Although Mr. Newbill's actions made plaintiff uncomfortable, she did not tell him that she was uncomfortable or report the incidents to management. Sometime before October 3, 2004, Mr. Newbill also pushed co-worker Erica Aden against a door and kissed her and made sexual remarks to co-worker Amanda Bevell and rubbed her back. Another co-worker, Valerie Nackbar, told plaintiff that Mr. Newbill had exposed himself in her face. None of these incidents were reported to defendant.

On October 3, 2004, plaintiff was getting medication for patients and bent down to get medication from a bottom drawer. Mr. Newbill came up behind plaintiff and "rubbed his erect penis against her buttocks." Complaint, ¶ 12. After the incident, plaintiff was dumbfounded and shocked; Mr. Newbill went to find Ms. Aden and forcibly restrained her and pressed himself into her buttocks. That night, plaintiff and Ms. Aden were upset and discussed what they should do about the incidents. The next morning, October 4, 2004, plaintiff reported the incident to Ms. Rinas, who reported it to her supervisor, Debbie Beihl, the Executive Director of Garden Terrace.

The following Wednesday, October 6, 2004, Ms. Rinas asked plaintiff to cover another employee's shift. Plaintiff agreed to work the shift after defendant assured her that Mr. Newbill would not be working that day. On October 7, 2004, Ms. Biehl suspended Mr. Newbill for four days, October 7th through October 10th, pending an investigation into the allegations. On October 8, 2004, plaintiff delivered a note to the facility that said she would not work that weekend because she was uncomfortable working while the investigation was ongoing. She also attempted to meet with Ms. Biehl, but Ms. Biehl was too busy. They did, however, speak on the phone, and Ms. Biehl told

plaintiff that Mr. Newbill was suspended until October 10th.  Neither plaintiff nor Ms. Aden came to work the weekend of October 9th and 10th.  That weekend, Ms. Biehl talked to the weekend staff about the allegations against Mr. Newbill.  During her investigation, Ms. Biehl spoke with Ms. Bevell, who told her that Mr. Newbill had made sexual comments towards her and had rubbed her back, but had not touched her in a sexual way.  On October 11, 2004, Ms. Biehl reported the status of her investigation to Trent Tolbert, the Regional Vice President.

On October 13, 2004, plaintiff and Ms. Aden met with Ms. Rinas and Ms. Biehl to discuss the allegations against Mr. Newbill.  During the meeting, Ms. Biehl told plaintiff and Ms. Aden that they would be separated at work, that Mr. Newbill would remain employed at the facility, and that they would have to continue working with him.  On October 14, 2004, plaintiff slipped a note under Ms. Rinas's door stating that she would not work October 16th and 17th because she was still uncomfortable that she might see Mr. Newbill.  Ms. Rinas told plaintiff that if she did not come to work, she would be a "no call, no show" and would be considered self-terminated.  Plaintiff responded that she did not want to quit her job.  Plaintiff did not work on October 16th and 17th.  Ms. Biehl and Ms. Rinas considered plaintiff self-terminated because she did not work that weekend; however,  Ms. Rinas's  conclusion that plaintiff had self-terminated violated defendant's policies because plaintiff had provided more than two-hours notice.  Mr. Newbill did not work at the facility after October 3, 2004, and was terminated on October 21, 2004, as a result of Ms. Biehl's investigation.  Plaintiff was not aware of Mr. Newbill's employment status throughout the investigation.

## II. STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### A. Plaintiff's Sexual Harassment Claim Under Title VII

To prevail on her claim, plaintiff must establish that her work environment was hostile and that defendant is liable for the hostile environment. *Adler*, 144 F.3d at 672-73. In its motion, defendant does not contest that plaintiff was subjected to a hostile work environment, but argues that it is not liable for creating the environment.

An employer is liable for a hostile work environment when it had actual or constructive knowledge of the hostile work environment and did not adequately respond to notice of the harassment. *Ford v. West*, 222 F.3d 767, 775-76 (10th Cir. 2000); *Adler*, 144 F.3d at 673. Constructive knowledge exists when the harassment is so pervasive that the employer should have known about it. *Adler*, 144 F.3d at 675. The harassment must be "'so egregious, numerous, and concentrated as to add up to a campaign of harassment.'" *Id.* (*citing Baker v. Weyerhaeuser Co.*, 903 F.2d. 1342, 1346 (10th Cir. 1990)).

Plaintiff argues that defendant had constructive knowledge of the hostile work environment for a variety of reasons, including because Mr. Newbill's sexual harassment constituted a campaign of harassment. Mr. Newbill began inappropriately touching plaintiff and making sexual comments

-4-

to her only a couple of weeks after she started working for defendant. In the three months that she worked at Garden Terrace, he was inappropriate toward her on at least five occasions. He put his arm around her waist and squeezed into her, commented on his cologne, told her that her scrubs made her butt look nice, and said that he could "do [her] better than [her] husband." He also pushed another female co-worker against a door and kissed her. And Ms. Nackbar told plaintiff that Mr. Newbill had exposed himself in her face. Then, on October 3, 2004, Mr. Newbill snuck up behind plaintiff and grinded his penis into her buttocks. The court concludes that a factfinder could find that these incidents were so egregious and numerous that they constituted a campaign of harassment and that defendant had constructive knowledge of the hostile work environment.

In addition to defendant's constructive knowledge, the court must consider whether defendant's "remedial and preventative action was 'reasonably calculated to end the harassment.'" *Adler*, 144 F.3d at 676. "A stoppage of the harassment shows effectiveness, which in turn evidences such reasonable calculation." Prompt investigation of the allegations and scheduling changes are also reasonable preventative actions. *Id.*

Defendant suspended Mr. Newbill on October 7, 2004, and began investigating the alleged harassment on October 9, 2004, when Ms. Biehl spoke with the weekend staff. Because a factfinder could conclude that defendant had constructive knowledge prior to October 2004, the court finds that there is a genuine issue of material fact regarding whether defendant's actions were prompt and reasonably calculated to end the harassment. Defendant's motion for summary judgment on plaintiff's sexual harassment claim under Title VII is denied.

### B. Plaintiff's Retaliatory Discharge Claim Under Title VII

Plaintiff next alleges that she was terminated in retaliation for reporting the alleged sexual harassment. Under the burden-shifting framework of *McDonnell Douglas Corp., v. Green*, 411 U.S.

-5-

792 (1973), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201-02 (10th Cir. 2006). Once the plaintiff presents a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the employment action. *Id*. If the defendant meets its burden, the plaintiff must demonstrate that the defendant's proffered reason is merely pretextual. *Id.*

For plaintiff to establish a prima facie case of retaliation, she must show: (1) that she engaged in protected opposition to discrimination; (2) "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'"; and (3) that a causal connection existed between the protected activity and the materially adverse action. *Id.* at 1202 n.2 (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414-15 (2006)).

Defendant argues that it did not take adverse action against plaintiff and that there is no causal connection between the alleged adverse action and the protective activity. Defendant contends that it is not responsible for plaintiff's termination because she self-terminated by failing to come to work Saturday, October 16th and Sunday, October 17th in violation of defendant's attendance policy. The court disagrees. Ms. Rinas spoke with plaintiff on October 13, 2004, and told her that if she did not come to work that weekend, she would be considered a "no show, no call." In response, plaintiff told Ms. Rinas that she did not want to quit her job, but that she was not coming to work that weekend for fear of seeing Mr. Newbill. Plaintiff provided defendant with notice of her absence, made it clear that she did not want to quit her job, and told Ms. Rinas that she would be back to work when the harassment matter was resolved.

Defendant's decision that these circumstances equate to plaintiff abandoning her job constitutes an adverse employment action. Additionally, the two-week gap between the protected

-6-

activity and the adverse action is sufficient to create an inference of causation based on timing alone. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (recognizing that a "one and one-half month period between protected activity and adverse action may, by itself, establish causation," but that "a three-month period, standing alone, is insufficient to establish causation."). The court finds that plaintiff has satisfied the requirements of a prima facie case of retaliation.

The court also finds that defendant has met its burden to articulate a nondiscriminatory reason for plaintiff's termination—defendant believes that plaintiff self-terminated by breaching defendant's attendance policy. The court next considers whether a genuine issue of material fact exists regarding defendant's proffered reason for plaintiff's termination. Plaintiff may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)). This is typically done by (1) showing defendant's legitimate reason is false, (2) showing that "the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) [showing] that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs.*, *Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000) (citations omitted).

Defendant knew that plaintiff was not coming to work because she feared being sexually harassed; plaintiff came to work to cover a co-worker's shift when defendant assured her Mr. Newbill would not be there. And defendant concluded that plaintiff self-terminated despite its knowledge that plaintiff wanted to keep her job. Additionally, in her deposition, Ms. Rinas stated

-7-

that she acted contrary to defendant's policy by determining that plaintiff had self-terminated.  After reviewing the evidence, the court finds that there is a genuine issue of material fact regarding whether plaintiff breached the attendance policy and whether defendant complied with its own policies.  The court, therefore, denies defendant's motion for summary judgment on plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 57) is denied.

Dated this 3rd day of January 2007, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**